BLANCHE, Judge.
This suit arises out of the sale of an automobile by the plaintiff, Jeanise Collins Brown, to defendant, Mack B. Johnson. The Nineteenth Judicial District Court granted judgment in favor of plaintiff and against defendant Johnson for the sum of $3,155.83, together with interest from date of judicial demand until paid. Plaintiff’s suit against defendant, Herman H. Stewart, Jr., was dismissed.
Johnson was granted judgment on his third party demand against third party defendant, Herman H. Stewart, Jr., in the amount of $3,155.83, together with interest from date of judicial demand until paid. All costs of the proceedings and an expert witness fee of $35 were to be paid by defendant Johnson and third party defendant Stewart.
All parties have appealed. We affirm.
The facts surrounding the aforesaid sale are as follows: Early in 1973, plaintiff and her father, John Collins, received title to a 1972 Delta 88 Oldsmobile sedan, bearing Serial No. 3L69 H2M574317, through the succession of plaintiff’s mother, Mrs. *831 Olivia Brazier Collins. John Collins donated his interest in the car to the plaintiff, thereby giving her the complete ownership thereof.
The automobile was mortgaged to General Motors Acceptance Corporation (GMAC) and at Mrs. Collins’ death had an outstanding balance of $4,647.82. There was a credit life insurance policy issued by Standard Life Insurance Company covering said balance. On January 30, 1973, Standard acknowledged its obligation under the insurance policy but due to a discrepancy concerning the age of Mrs. Collins they paid only $500 thereon, leaving a balance of $4,147.82. The discrepancy was subsequently corrected and the entire balance was paid. Meanwhile, the plaintiff continued the monthly payments to GMAC.
On June 24, 1973, plaintiff’s husband, Louis Brown, Jr., traveled from their home in Colorado to Baton Rouge in order to settle some affairs pertaining to the estate of Mrs. Collins and to take possession of the Oldsmobile. At that time Brown paid $354.04 to GMAC to bring the account up to current status. Prior to that payment, the loan had a balance of $3,773. Brown also contacted realtor Mack B. Johnson, one of the defendants herein, with regard to selling a house which was included in the estate. During their conversation, Johnson expressed an interest in purchasing the Oldsmobile. The conversation culminated in the signing of an agreement to purchase on June 26, 1973, by Johnson, Collins and by Brown on behalf of his plaintiff wife.
The agreement drawn up by Brown and Johnson’s secretary stated that the automobile would be transferred for the following consideration:
“Assumption
“Assumption price of $3,773.00
“In Consideration
“(1) Upon execution of Not[a]rized Bill of sale by Mr. Collins & Mrs.
Brown, Mr. Mack B. Johnson will remit the sum of $345.04 to Mr. Brown. $345.04 is the amount previously paid to GMAC to bring account up to current status in order that an assumption could be made.
“(2) The amount of the G[MAC] Note to be assumed by Mr. Johnson in-eluding the $345.04 to be returned to the Brown[s] is not to exceed [$]3,773.38, with the exception of the amount of the taxes that Mr. Johnson must pay as a buyer.
“(3) Mr. Johnson further agrees to pay Mr. Brown’s Air Fare from Baton Rouge, La., to Denver, Colorado, the nearest airport to his home in Fort Collins, Colorado.” (Exhibit P-8)
After the confection of the agreement, Johnson’s attorney, Samuel Dickens, prepared bills of sale for the parties. Collins signed one form in blank[1] and Brown was given a blank form for the plaintiff to sign and return to Dickens in Baton Rouge. Brown also received $85 for airplane fare back to Colorado as per the agreement. Johnson’s employee, Herman H. Stewart, Jr., drove Brown to the airport, and at that point Brown gave physical possession of the automobile in question and its keys to Stewart. Brown explained that he was under the impression that the car would be returned to Johnson, who had just signed the purchase agreement.
On Brown’s return to Colorado, the plaintiff signed the blank form and mailed it to Dickens. In compliance with their agreement, on August 4, 1973, Johnson sent plaintiff a check for $345.04.
On August 22, 1973, when Brown was again in Baton Rouge, he discovered that in spite of the agreement there had been no assumption and the loan was $291.68 in arrears. Brown contacted Johnson concerning the arrearage and Johnson gave him a check for $291.68, assuring Brown *832 that the third stipulation of the agreement, the assumption, would, in fact, take place. Brown applied the check to the loan balance.
Thereafter, Standard’s credit life insurance policy paid the balance on the loan, which at the time of payment amounted to $3,155.83. Additionally, they remitted $617.17 to the plaintiff, representing payments that had been made on the note since the death of Mrs. Collins. Plaintiff also received the title marked “Paid in Full.”
Upon receipt of the title and $617.17, the plaintiff realized that no assumption had taken place since the policy proceeds were paid to GMAC rather than to her. Plaintiff’s husband then called Johnson long distance to inquire about the assumption. Johnson contended that since the mortgage had been paid off he should not have to pay the full price which they had agreed upon. As of this date, it is clear that Johnson was considering himself as the purchaser.
Thereafter, on November 21, 1973 (and unknown to the plaintiff), the blank sale form the plaintiff had signed in June was completed, transferring the ownership of the automobile to defendant Stewart rather than to Johnson. Also, the stated consideration on the form was $800 rather than the assumption balance and plane fare that was specified in the June agreement. On that same date Stewart signed a promissory note in favor of Johnson for $800.
Subsequently, the plaintiff realized that even though she had the title to the automobile she did not possess same and, furthermore, had never received the purchase price. She then sued both Johnson and Stewart for the $3,155.83 paid to GMAC by the credit life insurance policy. Alternatively, she sought rescission of the sale for nonpayment of the purchase price.
Stewart reconvened against her, seeking the $617.17 that was paid on the note subsequent to the death of Mrs. Collins.
Johnson filed a third party demand against Stewart, seeking indemnification for any loss he might suffer. However, Stewart was never served with that demand.
At the trial Mack Johnson contended that he originally intended to buy the automobile and resell it to one of his employees, Murphy Johnson, or alternatively to let Murphy Johnson buy it himself. However, Mack Johnson changed his mind, deciding that another employee, defendant Stewart, was more in need of an automobile than Murphy Johnson. Therefore, Mack Johnson finally negotiated the deal in favor of Stewart.
In spite of the clear wording of the agreement quoted above, Mack Johnson contended that he was not the real purchaser but was merely standing good for the debt since Stewart could not assume the GMAC loan due to his poor credit rating and financial condition. Johnson contended that he was merely advancing realtor’s commissions to Stewart when he made the aforementioned payments to plaintiff. Additionally, he pointed out that Stewart always had possession of the automobile and that plaintiff’s husband was present when Stewart executed the note to him to repay him for the advances he had made and, therefore, was aware that Stewart was the true purchaser.
After rejecting these arguments, the trial judge made the following finding:
“The Court is of the opinion, based on the testimony adduced at trial, that what actually took place was two sales. The first sale was from plaintiff to Mack Johnson. This sale was under the terms of the purchase agreement (P-8). There was an agreement between Mack Johnson and plaintiff, acting through her husband, in which plaintiff agreed to give a thing (the car) to Mack Johnson in return for Mack Johnson giving a price. The price to be • paid by Mr. Johnson was a cash payment in the sum *833 of $345.04, payment of Mr. Brown’s airfare to Colorado, and assumption of the balance due GMAC, in the amount of $3,773.38. The sale was to take effect upon plaintiff furnishing a notarized bill of sale. The purchase agreement did not require that the bill of sale be to Mack Johnson. Plaintiff was furnished with a blank bill of sale which she signed and returned. Mack Johnson made the payment of $345.04, paid Mr. Brown’s airfare to Colorado, and made the next payment on the note to GMAC. Mack Johnson did not formally assume the note with GMAC and secure the release of plaintiff as was intended by the parties.
“The second sale was .from Mack Johnson to Herman Stewart. The price to be paid by Mr. Stewart was $800.00 and assumption of the note held by GMAC. Mr. Stewart signed a note payable to Mack Johnson for $800.00 but he never assumed the obligation on the note held by GMAC.”
“ * * * [l']t is evident that both Mr. Stewart and Mr. Johnson agreed to assume the note held by GMAC and that neither took any formal steps to bind themselves to GMAC or to secure plaintiff’s release from the obligation, as was contemplated in the agreement between plaintiff and Mack Johnson.” (Written Reasons for Judgment, Record, pp. 57, 58)
In view of the foregoing, judgment was rendered in favor of plaintiff and against defendant Johnson and further in favor of third party plaintiff Johnson and against third party defendant Stewart.
Plaintiff has appealed, contending that judgment should be rendered in her favor and against both defendants Johnson and Stewart, in solido. Defendant Johnson has appealed, alleging that the trial court erred in finding that he and Mrs. Brown entered into a valid sales agreement. Third party defendant Stewart has appealed the judgment against him and in favor of third party plaintiff Johnson, contending that the judgment is a nullity for lack of service.
The trial judge’s finding that two sales occurred is fully supported by the law and the evidence and will not be disturbed on appeal.
Johnson contends the trial judge’s holding that he was the real purchaser is clearly refuted by the bill of sale as it lists Stewart as the purchaser. While we acknowledge that Stewart’s name does appear as the purchaser therein, the evidence establishes that the bill of sale was not completed until November 21, 1973, when the sale from Johnson to Stewart took place. We surmise that Johnson, not yet having completed the form by inserting his own name as purchaser, simply entered Stewart’s name therein for his own purpose when he made the sale to Stewart.
Johnson also contends that the agreement between him and the plaintiff was an aleatory contract, citing LSA-C.C. Art. 2982 [2] in support thereof. As such, he argues that the payment of the total indebtedness by the credit life insurance policy constituted the fulfillment of an uncertain event, the occurrence of which relieved him of any further indebtedness to the plaintiff. However, there is absolutely nothing in the record to indicate that this was the intention of the parties when they entered into the agreement, and this contention is without merit.
Stewart was not a joint purchaser .with Johnson in this first sale and, therefore, plaintiff’s contention that she is enti- *834 tied to a judgment against both defendants, in solido, is without merit.
In view of the foregoing, we affirm the judgment of the trial court in favor of plaintiff, Jeanise Collins Brown, and against the defendant, Mack B. Johnson. We also affirm the judgment in favor of Herman H. Stewart, Jr., dismissing the principal demand of plaintiff, Jeanise Collins Brown.
Having affirmed the trial judge’s finding that there was a sale from third party plaintiff Johnson to Stewart, we now consider Stewart’s contention that the judgment is a nullity since he was never served with the third party petition and never waived service.
LSA-C.C.P. Art. 1201 provides that without citation and service all proceedings are absolutely null (except for summary and executory proceedings), and we find here that Stewart was never served and did not waive service. However, a litigant may subject himself to the jurisdiction of the court and waive all objections thereto by making a general appearance. LSA-C. C.P. Art. 7.[3]
Notwithstanding the fact that Stewart never answered Johnson’s third party demand against him and appeared at the trial only to defend against the original plaintiff in this suit, we are of the opinion that he did make a general appearance in the third party demand by timely filing a motion for new trial.
Said motion alleged that (1) the judgment rendered in fhvor of third party plaintiff Johnson was contrary to the law and evidence, and (2) the judgment was erroneous in that parol evidence was permitted to alter the terms of the bills of sale between the parties to the prejudice of Stewart. The motion called for plaintiff Brown and third party plaintiff Johnson to be duly served with a copy thereof and to be commanded to show cause why the judgment should not be set aside and annulled and a new trial granted for the purpose of reargument only. It contained no mention of lack of jurisdiction or an absence of citation and service.
Under the above-quoted provisions of LSA-C.C.P. Art. 7, a defendant making a general appearance waives the right to object to the insufficiency or lack of citation and service when he affirmatively invokes the jurisdiction of the court for the purpose of seeking any relief other than that enumerated in the article.
Here the defendant sought a new trial solely on the grounds that the judgment was contrary to the law and evidence and that the defendant was prejudiced by the introduction of parol evidence concerning the subject sales. In so doing he affirmatively invoked the jurisdiction of the court and thereby waived all objections thereto. Cook v. Deshautreaux & Klein Pediatric Clinic, 294 So.2d 591 (La.App. 4th Cir. 1974), writ refused, La., 296 So.2d 834 (1974).
Accordingly, the judgment of the trial court in favor of third party plaintiff, Mack B. Johnson, and against the third *835 party defendant, Herman H. Stewart, Jr., is also affirmed.
All costs of this appeal are to be paid by defendant, Mack B. Johnson, and by third party defendant, Herman H. Stewart, Jr.
Affirmed.

. It appears from the record that it was unnecessary for Collins to execute the sale since he had previously donated his interest in the automobile to plaintiff.

. LSA-C.C. Art. 2982 provides:
“The aleatory contract is a mutual agreement, of which the effects, with respect both to the advantages and losses, whether to all the parties or to one or more of them, depend on an uncertain event.”

. In pertinent part, LSA-C.C.P. Art. 7 provides :
“Except as otherwise provided in this article, a party makes a general appearance which subjects him to the jurisdiction of the court and impliedly waives all objections thereto when, either personally or through counsel, he seeks therein any relief other than:
“(1) Entry or removal of the name of an attorney as counsel of record;
“(2) Extension of time within which to plead;
“(3) Security for costs;
“(4) Dissolution of an attachment issued on the ground of the non-residence of the defendant; or
“ (5) Dismissal • of the action on the ground that the court has no jurisdiction over the defendant. * * * ”